Honorable Donald L. Manford State Senator, District 8 Room 221, State Capitol Building Jefferson City, Missouri 65101
Dear Senator Manford:
This is in response to your request for an official opinion of this office concerning the question of whether the General Assembly has the constitutional authority, when appropriating moneys from general revenue for the University of Missouri, to specify items and purposes in any more detail than one "lump sum" to the Board of Curators for the entire university system. You have suggested that the legislature is considering instead of the "lump sum" appropriation for the university system which has basically been utilized in the past recent years, that appropriations be "itemized" at least by specifying amounts for each campus.
The difference between these two approaches in appropriations was stated in Starling Realty Corporation v. State,20 N.Y.S.2d 878, 883 (1940), as follows:
 "[4] Further to the claim that moneys were in fact available, some reference should be made to the difference between a lump sum appropriation and an itemized line appropriation. The lump sum appropriation leaves the allocation of the sum appropriated to the Board or body for whom the appropriation is made, while in the itemized line appropriation, the allocation or segregation is made by the Legislature. Nellis v. State, 204 App. Div. 176, 197 N.Y.S. 762."
The General Assembly has the power to enact any law not prohibited by the Constitution, for the State Constitution, unlike the Federal Constitution which is a grant of power, is a limitation on legislative power. State ex inf. Danforth v. Merrell,530 S.W.2d 209 (Mo.Banc 1975). In particular the power of the General Assembly with respect to public funds, subject to constitutional limitations, is supreme. State ex rel. Davis v.Smith, 75 S.W.2d 828 (Mo.Banc 1934).
In carrying out this power, the legislature must specify sums of money, defined as an "item" in State ex rel. Cason v.Bond, 495 S.W.2d 385 (Mo.Banc 1973), and for each item must specify a purpose for which the money is to be spent. ArticleIV, Sections 23 and 28, Constitution of Missouri; and see, Stateex inf. Danforth v. Merrell, supra at 213.
The Constitution does not specify, however, what is required or proper as to items and purposes and, in particular, does not specify whether lump sum appropriations state a sufficient purpose. The question of the validity of lump sum appropriations is not before us and we do not opine on the question. As to more itemized appropriations, while also not opining on the validity of any specific appropriations, we do note the court's approval of appropriations by divisions of departments and for each division three generally recognized purposes of personal service, equipment purchase and repair, and operations. The court also approved appropriations for parts or subpurposes of these three purposes. State ex inf. Danforth v. Merrell, supra, and alsoState ex rel. Cason v. Bond, supra.
Thus, the power of the General Assembly to appropriate by line item to the Board of Curators is supreme unless prohibited by some provision of the Constitution of Missouri.
It is suggested that Article IX, Section 9(a), Constitution of Missouri, is such a prohibition and that State ex rel. Curatorsof University of Missouri v. McReynolds, 193 S.W.2d 611 (Mo.Banc 1946), and State ex rel. Thompson v. Board of Regents for NortheastMissouri State Teachers' College, 264 S.W. 698 (Mo.Banc 1924), support such conclusion. Article IX, Section 9(a), provides:
 "The government of the State University shall be vested in a board of curators consisting of nine members appointed by the governor, by and with the advice and consent of the senate."
It was held in McReynolds, supra at 613, that the Board of Curators has sole control and custody of the fees received from dormitories and dining rooms. The court, however, did not base the decision on the predecessor of Article IX, Section 9(a), but based such decision on Thompson and a statute expressly excepting such fees from the requirement they be placed in the treasury.
The Thompson case, which is often cited as authority for independent status of the University of Missouri, held that moneys received by a state college from insurance after a building was destroyed by fire did not have to be placed into the state treasury and thus be subject to appropriation before use by the college. That case did not rely on or even cite Article IX, Section 9(a). The ruling was based on a historical use of certain funds of the state institutions of higher learning; and based on this historical custom, the court held such funds as received were not "revenue" of the state as meant by the constitutional provisions requiring state revenues to be placed in the treasury.
Accordingly, neither McReynolds nor Thompson apply here. The only case in Missouri that discusses in any detail the board's power to govern the university is State ex rel. Heimberger v.Board of Curators of University of Missouri, 188 S.W. 128 (Mo. Banc 1916). In that case the university challenged the power of the legislature to establish by statute departments in the university. The board contended, based on the predecessor of Article IX, Section 9(a), l.c. 131-132:
 "[9] II. It is insisted the provision in section 5, art. 11, that `the government of the state university shall be vested in a board of curators' deprives the General Assembly of all power to legislate concerning the university with respect to the establishment of new departments or new courses of study in established departments and, in itself, renders invalid the act of March 23, 1915. Counsel do not mince words. In plain language they state their contention to be that the quoted words constitute the board of curators a separate and distinct department of the state government, over which the General Assembly has no power and with which it has practically nothing to do except to make such appropriations as it deems proper under that part of section 5 which deals with appropriations as above pointed out. Upon this phase of the case the argument depends wholly upon the meaning of the word `government' as it appears in section 5."
The court rejected this broad contention and held the act in question valid.
In doing so, the court, at page 134, citing a provision of the Constitution dealing with appropriations as authority to support the conclusion, stated:
 "Neither at the time of the adoption of the Constitution in 1875 nor since has the state university had any income, independent of appropriations by the General Assembly, which bore any considerable ratio to the sums necessary for its maintenance. It must have been apparent to the framers of the Constitution that if the people adopted the Constitution, the university's development and growth, so far as money was required therefor, would depend upon appropriations from the state treasury. That these appropriations would be under the absolute control of the General Assembly the framers of the Constitution expressly provided. . . ."
There is one additional case which concerned the right of the board to govern the university that also dealt with the validity of a statute which the board contends interfered with this right. Curators of University of Missouri v. Public ServiceEmployees Local No. 45, 520 S.W.2d 54 (Mo.Banc 1975). The statutes involved granted rights of public employees to join labor organizations. The court rejected the contention that such statutes encroached on such right to govern.
In view of these cases, particularly the Heimberger case, it is our opinion that the itemized appropriation suggested by your request would not unconstitutionally encroach upon the board's right to govern the university, particularly in view of the broad power of the General Assembly to control and direct the use of the state's general revenue. In this regard, we observe this view is in keeping with Article IX, Section 9(b) which reads:
 "The general assembly shall adequately maintain the State University and such other educational institutions as it may deem necessary." (Emphasis supplied)
Further, we note that various kinds of line item appropriations have been made to the university in the past. See, for example, Laws of Missouri 1945, page 111; Laws of Missouri 1947, Section 7.010, pages 135-137; and Laws of Missouri 1949, Section 7.010, pages 123-125.
This conclusion is supported by decisions in other states.State ex rel. Black v. State Board of Education, 196 P. 201 (Idaho 1921), dealt with constitutional language more explicit than here, providing the Board of Regents shall have the "control and direction of all the funds of, and appropriations to, the university." Article IX, Section 10, Constitution of Idaho. The court said as to appropriations, l.c. 205:
 "When an appropriation of public funds is made to the University, the Legislature may impose such conditions and limitations as in its wisdom it may deem proper. If accepted by the regents, it is coupled with the conditions, and can be expended only for the purposes and at the time and in the manner prescribed, and can be withdrawn from the state treasury only as provided by law."
In State ex rel. University of Minnesota v. Chase,220 N.W. 951 (Minn. 1928), the court applied constitutional language similar to Missouri, stating l.c. 955:
 ". . . At the one extreme, the Legislature has no power to make effective, in the form of law, a mere direction of academic policy or administration. At the other extreme, it has the undoubted right within reason to condition appropriations as it sees fit. . . ."
And, in State Board of Agriculture v. State AdministrativeBoard, 197 N.W. 160 (Mich. 1924), the court stated, l.c. 161, there was a distinction between funds received by way of appropriations and other college funds, and that appropriations may be made upon condition that the money shall be used for a specific purpose or upon any other conditions the legislature can lawfully impose. Thus the court considered the character of the conditions attached to the appropriation in question. The first condition was that the money be used for a specific purpose of carrying on a cooperative agricultural extension program and this condition was upheld. The second condition was that the money be used subject to the general supervisory control of a state board created not by the Constitution but by the legislature. This second condition was held invalid. See also Regentsof University of Michigan v. State, 208 N.W.2d 871 (Mich.App. 1973) affirmed in part 235 N.W.2d 1 (Mich. 1975), following the same rule. Finally, we have reviewed State Board of Agriculturev. Fuller, 147 N.W. 529 (Mich. 1914), and find no departure from this rule.
CONCLUSION
Therefore, it is the opinion of this office that the legislature is not prohibited by Article IX, Section 9(a), Constitution of Missouri, when appropriating from general revenue to the Board of Curators for the University of Missouri, from specifying amounts for each campus.
The foregoing opinion, which I hereby approve, was prepared by my assistant, Walter W. Nowotny, Jr.
Yours very truly,
 JOHN ASHCROFT Attorney General