OPPONENTS OF PRISON SITE,
INC., a Missouri Not–for–Profit
Corporation, et al., Appellants,

v.

The Honorable Mel CARNAHAN, Governor of the State of Missouri, et al., Respondents.

Nos. WD 56246, WD 56325.

Missouri Court of Appeals,
Western District.

Feb. 23, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 30, 1999.

Application to Transfer Denied
April 23, 1999.

Paul Simon, Jr., Clayton, for Appellants.

Gary Lee Gardner, Asst. Atty. Gen., Jefferson City, Joseph A. Colagiovanni, Jr., David W. Harlan, St. Louis, Thomas L. Ray, Jr., Farmington, for Respondents.

Before: ULRICH, P.J., and SMART and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

The Opponents of Prison Site, Inc., Janice Mahurin, Janet Smith, Patsy Cox, Patricia Thomas, Gregory Neubrand, and Crystal Noyes appeal from the circuit court's judgment denying their petition for declaratory judgment, seeking to declare illegal the choice by the Honorable Mel

Carnahan, the Governor of the State of Missouri, of a site located in Bonne Terre, Missouri, as the site for construction of the Missouri Eastern Reception, Diagnostic and Correctional Center (the prison), and for injunctive relief, seeking to prohibit the respondents, the Governor; the Missouri Department of Corrections (the DOC); Richard Hanson, the Commissioner of the Office of Administration; Randall Allen, the Director of the Division of Design and Construction (the Division); the City of Bonne Terre, Missouri; Beneficial Services Corporation (the BSC); and the Missouri Public Facilities Corporation II (the MPFC), from constructing the prison on the Bonne Terre site.

On appeal, the appellants raise five points. In Points I and II, they claim that the trial court erred in denying their petition because the Governor's selection of the site for the prison was done in violation of Chapter 21,[1] which reserved that right to the General Assembly, and in doing so, he violated the Separation of Powers Clause of the Missouri Constitution. In Point III, they claim that the trial court erred in denying their petition because Bonne Terre could not, through its agent, the BSC, legally acquire and convey the property to the State for construction of the prison in that it was outside the city limits and had not been annexed in accordance with state law. In Point IV, they claim that the trial court erred in concluding that they lacked standing to challenge Bonne Terre's annexation of the property to be used for the prison site (the Coplin property). In Point V, the appellants claim the trial court erred in denying, for laches, their petition because the stipulated facts did not support a finding that the appellants neglected to bring their action for declaratory and injunctive relief within a reasonable time.

We affirm.

1. All statutory references are to RSMo 1994,

## Facts

### Site Selection

Sometime in April 1995, the DOC solicited proposals from various cities within the state for the location of a prison. The City of Bonne Terre submitted a proposal offering five alternative sites in and around the city as potential sites. On May 22, 1995, the General Assembly's Joint Committee on Corrections (the JCC) recommended Bonne Terre to the Governor as the site for construction of the prison. On May 25, 1995, the Governor approved the Committee's recommendation. Sometime shortly thereafter, the individual appellants became aware of the Governor's choice of sites. On May 26, 1995, the DOC and the Division selected site five from among the alternative sites located in or around Bonne Terre for the location of the prison.

In the First Regular Session of the 88th General Assembly, the General Assembly enacted House Bill No. 18 appropriating $10,875,000 for the construction of the prison on the east side of the state. In September 1995, the State entered into a contract with Sverdrup Facilities, Inc., for the design of the prison.

In December 1995, Bonne Terre learned that the owners of site five were not willing to sell their property. Bonne Terre proceeded to offer the four other alternative sites for the prison, along with the real property owned by Allen Coplin, which was located outside Bonne Terre's city limits. On December 6, 1995, the BSC, as the agent for Bonne Terre, acquired an option to purchase for $1,200,000 the Coplin property before June 15, 1996. On June 14, 1996, this option was extended to January 10, 1997. The BSC is a community-based not-for-profit corporation which, pursuant to a March 2, 1995, contract with Bonne Terre, manages Bonne Terre's economic development program.

On June 15, 1996, the DOC and the Division selected the Coplin property as

unless otherwise indicated.

the new site for the location of the prison and entered into an agreement with Bonne Terre, whereby it agreed to convey, or cause to be conveyed, to the State the property at no cost to the State, excluding a certain portion which was to be retained by the city for a waste water treatment plant and roadway access to the prison. For its part, the State agreed to construct the prison on that property and, if it did not, then to reimburse Bonne Terre for the purchase price of the property.

## Site Annexation

On October 7, 1996, Mr. Coplin submitted to the city a petition, pursuant to § 71.012, which governs voluntary annexation of property, requesting the annexation of his property. On October 29, 1996, Bonne Terre published in the *Daily Journal*, a daily newspaper published in the area, a notice of public hearing on the petition to annex the Coplin property. On November 7, 1996, Bonne Terre held a public hearing on the petition. At the hearing, no one spoke in opposition to the proposed annexation. There were no written objections to the proposed annexation, pursuant to § 71.012.2(3), filed with the Bonne Terre City Council within fourteen days of the hearing by two percent or more of the qualified voters of Bonne Terre or by two qualified voters having ownership of the Coplin property.

On November 14, 1996, Bonne Terre passed Bill No. 11–96–21 enacting Ordinance 10.29, annexing the Coplin property. Also on November 14, 1996, Bonne Terre passed Bill No. 11–96–04, enacting Ordinance 10.29A, authorizing Bonne Terre to execute an agreement with Mr. Coplin, which provided:

Please accept this letter as a pre-annexation agreement by endorsing at the bottom of the page and returning to me. The City of Bonne Terre will hereby agree that your annexation will be valid only if the purchase of your land for the Eastern Missouri Diagnostic Center takes place in accordance with the plan

agreed to by the State of Missouri and the City of Bonne Terre.

Both ordinances were filed with the St. Francois County Recorder of Deeds on December 11, 1996.

## Site Acquisition

On December 31, 1996, the BSC's board of directors authorized it to enter into a real estate contract for purchase of the Coplin property by a promissory note payable on February 14, 1997, and secured by a deed of trust on the property. On January 3, 1997, the BSC and Mr. Coplin signed a real estate contract for the sale and purchase of the Coplin property; the BSC executed a promissory note payable to Mr. Coplin, secured by a deed of trust on the property; and Mr. Coplin conveyed his property to the BSC. On January 30, 1997, Bonne Terre passed Bill No. 01–97–07 enacting an ordinance authorizing the issuance of Certificates of Participation for the purpose of providing funds to purchase the Coplin property and to pay for the costs of improving and extending Bonne Terre's waterworks system. On February 10, 1997, the BSC conveyed to Bonne Terre that portion of the Coplin property to be used for the waste water treatment plant and roadway access to the prison and conveyed to the State that portion of the Coplin property to be used for construction of the prison.

In May 1997, the State entered into a contract with Bloomsdale Excavating Co., Inc., for preliminary site work for the prison. On December 4, 1997, the Division awarded to the MPFC a contract for the construction and financing of the prison.

## Legislative Action

In 1997, during the First Regular Session of the 89th General Assembly, the General Assembly passed House Bill No. 722 authorizing the Commissioner of the Office of Administration (the Commissioner) to lease to a private developer that portion of the Coplin property to be used for the construction of the prison. This

bill referenced the specific site for the prison by setting forth the legal description of the Coplin property. Also in 1997, during the First Regular Session of the 89th General Assembly, the General Assembly passed House Bill No. 18 which appropriated $500,000 for "land acquisition, planning, and infrastructure improvements for the prison at Bonne Terre, Missouri." In 1998, during the Second Regular Session of the 89th General Assembly, the General Assembly passed House Bill No. 1020, which appropriated $1,000,000 for "an infrastructure grant for the construction of a road at the Bonne Terre Prison in Bonne Terre."

### Procedural History

On December 17, 1997, the appellants filed a "Petition for Writ of Mandamus" with the Missouri Supreme Court seeking an order preventing the construction of the prison at Bonne Terre, which was denied by the court on January 6, 1998.

On April 28, 1998, the appellants filed in the Circuit Court of Cole County, Missouri, their two-count petition seeking: (1) a declaratory judgment that the Governor's selection of the site for the prison was unlawful because the General Assembly, rather than the Governor, had the authority to select the site for the prison and that Bonne Terre's annexation of the Coplin property was invalid; and (2) temporary, preliminary, and permanent injunctions enjoining the respondents from proceeding with the construction of the prison. A hearing was held on June 30, 1998, and on July 8, 1998, the trial court denied the appellants' petition for declaratory judgment and injunctive relief.

This appeal follows.

### *Standard of Review*

■ Appellate review of the denial of a petition for declaratory judgment and injunctive relief is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *State ex rel. State Highway Comm'n v.*

*Finch,* 664 S.W.2d 53, 54 (Mo.App.1984); *Emcasco Ins. Co. v. Donnelly,* 607 S.W.2d 460, 462 (Mo.App.1980). The judgment of the trial court will be affirmed, unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Finch,* 664 S.W.2d at 54.

### I.

In Point I, the appellants claim that the trial court erroneously declared and applied the law in denying their petition for declaratory judgment, seeking to declare as illegal the Governor's choice of Bonne Terre as the prison site, and for injunctive relief, seeking to prohibit construction of the prison on this site. As to this claim, the appellants contend that Chapter 21 mandated that the General Assembly, not the Governor, select Bonne Terre as the prison site and in doing so, he violated Article II, Section I of the Missouri Constitution as it pertains to the separation of powers of the three branches of state government. The trial court denied the appellants' petition on the basis that the law did not reserve to the General Assembly the exclusive right to select prison sites and that, even if it did, the General Assembly ratified, through subsequent legislative action, the Governor's selection. Thus, initially, we must decide whether, as the appellants contend, the General Assembly reserved in Chapter 21 the exclusive right to decide where prisons would be constructed in the State of Missouri.

■ The legislative power of our state government is vested in the General Assembly. Mo. CONST. art. III, § 1. And, unless otherwise restricted by the state constitution, this power "is unlimited and practically absolute." *State ex rel. Farmers' Elec. Coop., Inc. v. State Envtl. Improvement Auth.,* 518 S.W.2d 68, 72 (Mo. banc 1975). Hence, unless otherwise limited or restricted by the constitution, the General Assembly was free to enact legislation reserving to itself the exclusive pow-

er to determine sites for the construction of prisons. The respondents do not cite nor do we find any such limitations or restrictions in the constitution. Hence, the question is whether the General Assembly did, in fact, in Chapter 21 reserve to itself the exclusive power and right to make prison site selections.

In contending that the General Assembly reserved in Chapter 21 the right to determine where to construct prisons, the appellants specifically rely on §§ 21.440, 21.455, and 21.465, dealing with the JCC. These sections provide, in pertinent part, as follows:

**21.440. Committee created, members, appointment, terms—political representation.**

1. There is established a permanent joint committee of the general assembly to be known as the "Joint Committee on Corrections" to be comprised of six members of the senate and six members of the house of representatives.

**21.455. Duties of joint committee.**

It shall be the duty of the committee:

(1) To make a continuing study and analysis of penal and correctional problems as they relate to this state;

(2) To devise and arrange for a long-range program for the department and its correctional facilities based on a plan of biennial development and making the recommendation of any required correctional facilities in the state in accordance with the general assembly's powers of appropriation;

. . .

(4) To make a continuing study and review of the department of corrections and the correctional facilities under its jurisdiction, including the internal organization, management, powers, duties and functions of the department and its institutions, particularly, by way of ex-

tensions but not of limitation, in relation to the

. . .

(g) Location and establishment of new correctional facilities or of new buildings and facilities;

. . .

(8) To make recommendations to the general assembly for *legislative action* and to the department of corrections and to the division of youth services for administrative or procedural changes.

**21.465. Annual report of committee, contents.**

It shall be the duty of the committee to compile a full report of its activities for submission to the general assembly. The report . . . shall include any recommendations which the committee may have for *legislative action . . . .* [2]

(Emphasis added.) In making their argument, the appellants rely heavily on the "legislative action" language in both §§ 21.455 and 21.465. It is this language, they contend, that expresses a legislative intent to authorize the General Assembly, not the Governor, to make decisions as to where to construct prisons.

 In interpreting the sections in question, we must ascertain " 'the intent of the legislature from the language used, to give effect to that intent if possible, and to consider words used in the statute in their plain and ordinary meaning.' " *Delta Air Lines, Inc. v. Director of Revenue,* 908 S.W.2d 353, 355 (Mo. *banc* 1995) (*quoting Farmers' & Laborers' Coop. Ins. Ass'n v. Director of Revenue,* 742 S.W.2d 141, 145 (Mo. *banc* 1987)). In examining the General Assembly's intent in enacting a statute, we assume that it did not intend a strained construction of a term or provision. *Columbia Athletic Club v. Director of Revenue,* 961 S.W.2d 806, 809 (Mo. *banc* 1998). "Courts are without authority to read into a statute a legislative intent con-

---

**2.** The record does not reflect whether the JCC made its annual report to the General Assembly in the years in question, as required by § 21.465. However, since the appellants have not raised this issue on appeal, we need not address it.

trary to the intent made evident by the plain language...." *State v. Smith*, 972 S.W.2d 476, 479 (Mo.App.1998). "Where the language of the statute is clear and unambiguous, there is no room for construction." *Manfield v. Auditorium Bar & Grill, Inc.*, 965 S.W.2d 262, 269 (Mo. App.1998).

■ After reviewing the sections in question and giving the words used their plain meaning, we find that the legislative intent, with respect to decisions concerning the construction of prisons, including those involving site selection, was for the JCC to make recommendations to the General Assembly and for it, after due consideration, to decide what course to take, if any, through legislative action. In so finding, we reject the respondents' argument that prison site selection would constitute a mere "administrative or procedural change" that would fall under the power of the executive branch, as directed in § 21.455(8). Giving these terms their plain and ordinary meaning, we fail to see how the power to expend millions of tax dollars on a new prison could be categorized as a mere administrative or procedural change in the operation of the prison system, given the fact that the power to appropriate money lies exclusively with the legislative branch. Mo. CONST. art. III, § 36; art. IV, §§ 23, 28; *State ex rel. Public Serv. Comm'n v. Bonacker*, 906 S.W.2d 896, 901 (Mo.App.1995) (*quoting State ex inf. Danforth v. Merrell*, 530 S.W.2d 209, 213 (Mo. banc 1975)).

■ Having determined that the General Assembly statutorily reserved unto itself the exclusive right to finally select prison sites in this state, we necessarily find that the Governor had neither inherent, express, nor implied authority to do so, as the respondents contend. However, our inquiry does not stop there. In making their claim in this point, the appellants assume that the Governor, not the General Assembly, made the final selection of the Bonne Terre site, in violation of the procedure set forth in Chapter 21 and the Separation of Powers Clause of our state constitution. Our reading of the record and the law leaves us with the contrary belief, that the General Assembly, not the Governor, made the final selection of the Bonne Terre site, pursuant to legislative action, as required by Chapter 21.

"Legislative action" has been defined as an act of the legislature. *Fort Zumwalt Sch. Dist. v. State*, 896 S.W.2d 918, 922 (Mo. banc 1995). This definition, for purposes of interpreting the sections in question, would logically include appropriations, *id.*, inasmuch as only the General Assembly has the authority to appropriate state funds. Mo. CONST. art. IV, § 23. Moreover, in § 21.455(2), the General Assembly specifically refers to its "powers of appropriation" with respect to the JCC's recommendations as to the construction of correctional centers in the state.

The record reflects that in 1995, during the First Regular Session of the 88th General Assembly, the General Assembly passed House Bill No. 18, appropriating $10,875,000 for the construction of a prison on the east side of the state. In 1997, during the First Regular Session of the 89th General Assembly, the General Assembly passed House Bill No. 18, which appropriated $500,000 for "land acquisition, planning, and infrastructure improvements for the prison at Bonne Terre, Missouri." And in 1998, during the Second Regular Session of the 89th General Assembly, the General Assembly passed House Bill No. 1020 which appropriated $1,000,000 for "an infrastructure grant for the construction of a road at the Bonne Terre Prison in Bonne Terre." Without the passage of these appropriation measures by the General Assembly, no state funds would be available for the construction of the prison at Bonne Terre. Mo. CONST. art. III, § 36; *State ex rel. Sikeston R–VI Sch. Dist. v. Ashcroft*, 828 S.W.2d 372, 374 (Mo. banc 1992). Given the record and under the law, as we find it, the Governor's choice of the Bonne Terre site amounted to nothing more than a recom-

mendation to the General Assembly, which it was free to reject by legislative action in refusing to appropriate money for the same, *Buechner v. Bond*, 650 S.W.2d 611, 618 (Mo. *banc* 1983) (Billings, J., dissenting), and in selecting a different site by appropriating funds for construction of the prison there.

Even if we were to find that the appropriations by the General Assembly as to the Bonne Terre site were not legislative acts as required in Chapter 21, the record reflects that the General Assembly did take a "non-appropriation" legislative action that would satisfy the "legislative-action" requirement of Chapter 21, such that we can conclude that the General Assembly, not the Governor, selected the Bonne Terre site. In this respect, in 1997, during the First Regular Session of the 89th General Assembly, it passed House Bill No. 722, authorizing the Commissioner of the Office of Administration to lease to a private developer the property to be used for the construction of the prison. House Bill No. 722 provided, in pertinent part, that "[t]he commissioner of administration [wa]s ... authorized to lease to a private developer property owned by the state in St. Francois County, Missouri, for the purposes of constructing a facility for the use of the department of corrections," with a legal description to the Bonne Terre property. Because this bill contained a precise legal description of the proposed site for the new prison, we can infer that the General Assembly, when considering its passage, was aware that the site for the prison, under the bill, would be in Bonne Terre; and thus, in passing it, selected by "legislative action" Bonne Terre as the site for the construction of the prison. As such, we find that the statutory scheme for determining prison sites, as set forth in §§ 21.440, 21.455, and 21.465, was followed in the case at bar.

Although couched in terms of the General Assembly's "ratifying" the Governor's selection of Bonne Terre through appropriations, as opposed to its making the actual decision to construct the prison on the Bonne Terre site, the appellants make the argument in their Point II that the General Assembly's appropriation measures constituted substantive legislation by appropriation, which is forbidden by Mo. CONST. art. III, § 23, and did not satisfy the legislative-action requirement of Chapter 21. Implicit in the appellants' argument that the appropriation measures could not be used to satisfy the legislative-action requirement of Chapter 21 is that only substantive legislation can satisfy this requirement. We reject this proposition.

 The appellants are correct in asserting as a general proposition that an appropriation bill is limited to appropriating state funds. *Rolla 31 Sch. Dist. v. State*, 837 S.W.2d 1, 4 (Mo. *banc* 1992). They are also correct that a general appropriation bill, containing appropriation for numerous unrelated state activities, cannot amend substantive legislation because such an amendment would violate the constitutional requirement that "[n]o bill shall contain more than one subject ... except ... general appropriation bills, which may embrace the various subjects and accounts for which moneys are appropriated." Mo. CONST. art. III, § 23; *Rolla 31 Sch. Dist.*, 837 S.W.2d at 4. However, the appellants cite no authority, and we can find none, for their assertion that a substantive legislative act was required of the General Assembly in order for it to "select the Bonne Terre prison site," as required by Chapter 21. As discussed, *supra*, we read Chapter 21 as only requiring legislative action, which would include appropriations. Thus, the appropriation bills in question here did not violate the state constitution to the extent they reflected the General Assembly's selection of the Bonne Terre prison site in that they did not amend any substantive laws in regard thereto.

As stated, *supra*, to be successful on their claim in this point, the appellants were required to show that the Governor, not the General Assembly, made the final selection of Bonne Terre as the prison site

and that his action usurped the power granted to the General Assembly in Chapter 21 and, thus, violated the Separation of Powers Clause of the Missouri Constitution. Because we find, for the reasons stated, that the General Assembly, not the Governor, made the final selection, by legislative action, of the Bonne Terre site for the prison, their claim must fail.

Point denied.

Having already addressed the appellants' claim in Point II, we now turn to their Point III.

## II.

In Point III, the appellants claim that the trial court erred in denying their petition because the City of Bonne Terre did not, through its agent, the BSC, legally acquire and convey the Coplin property to the State for construction of the prison in that, at the time, the property was located outside the Bonne Terre city limits and had not been annexed in accordance with state law. This claim turns on the appellants' assertion that the city's annexation of the Coplin property was not final and complete in accordance with state law. Thus, the issue we must decide in this point is whether the city's annexation of the Coplin property was final and complete in accordance with state law.

The appellants challenge Bonne Terre's annexation of the Coplin property on two grounds. They first contend that the annexation was invalid because Ordinance 10.29, the ordinance actually annexing the Coplin property, was void. They assert that it was void in that it was dependent upon the enactment of Ordinance 10.29A, which embodied a pre-annexation agreement between Bonne Terre and Mr. Coplin, which they contend was void, rendering the annexation void in that it made the annexation contingent on the State agreeing to build the prison on that site, which prevented the annexation becoming com-

plete and final pursuant to § 77.010. In the alternative, they contend that, even if we find that Ordinance 10.29 was not void by reason of Ordinance 10.29A, the annexation was still invalid to allow the property's acquisition and conveyance in that both ordinances were vague and indefinite such that they were void. The respondents claim that Ordinance 10.29 was a valid ordinance, independent of Ordinance 10.29A, which completely and finally annexed the Coplin property prior to the time of its acquisition by the city's agent, the BSC, and as such the acquisition and conveyance of the property to the State was legal. We will first address the appellants' argument that Ordinance 10.29 did not completely and finally annex the Coplin property in that it was dependent on Ordinance 10.29A, which was void.

**Was Ordinance 10.29 legally sufficient to completely and finally annex the Coplin property prior to its acquisition and conveyance to the State by the BSC as agent for Bonne Terre?**

 The appellants do not assert that Ordinance 10.29 was invalid on its face, other than asserting, in the alternative, that it was vague. Instead, they argue that, reading it and 10.29A together, the annexation was not legally complete and final prior to the city's acquisition and conveyance of the property, in that, pursuant to Ordinance 10.29A, it was contingent on the State's constructing the prison on the property. In making this argument, they necessarily contend that Ordinance 10.29 was dependent upon Ordinance 10.29A, which they contend was void. They further contend that, if Bonne Terre had known that Ordinance 10.29A was void, it would not have passed Ordinance 10.29, choosing to forego annexation of the property completely. With respect to the invalidity of Ordinance 10.29A, the appellants argue that this ordinance violated § 71.012.3,[3] providing that the annexation

---

3. Section 71.012.3 provides, in pertinent part, as follows:

3. If no objection is filed, the city, town, or village shall extend its limits by ordinance to

of property is complete and final upon the filing of the ordinance with the county clerk, in that it did not contemplate a complete and final annexation at the time of Ordinance 10.29's passage.

In support of their argument that Ordinance 10.29 was void because Ordinance 10.29A was void, the appellants rely on *Heidrich v. City of Lee's Summit,* 916 S.W.2d 242 (Mo.App.1995), which held that when one part of an ordinance is partially invalid, " 'the remainder of the ordinance should not be stricken down as void unless it may be found judicially that the city council would not have passed the entire enactment if it had known of such invalidity.' " *Id.* at 251 (*quoting Wilson v. City of Waynesville,* 615 S.W.2d 640, 642 (Mo.App. 1981)); *City of Boonville v. Rowles,* 869 S.W.2d 889, 892 (Mo.App.1994). Their reliance is misplaced. *Heidrich* is inapposite to the case at bar in that Ordinances 10.29 and 10.29A are separate ordinances and were enacted under different bills. Thus, they are not simply subsections of one ordinance, as was the case in *Heidrich.* Furthermore, we find no basis in the record, other than the appellants' bald assertion in their Argument, for finding that 10.29 was dependent on 10.29A, that had Bonne Terre known of the alleged invalidity of Ordinance 10.29A, it would not have enacted Ordinance 10.29 annexing the property. To the contrary, given the fact that Bonne Terre's objective in annexing the Coplin property was to carry out its agreement to convey, or cause to be conveyed, the property to the State for the construction of the prison, we can reasonably infer that Bonne Terre would have passed Ordinance 10.29, in any event, to achieve this objective.

For the reasons stated, we find that Ordinance 10.29 was not dependent on the validity of Ordinance 10.29A. *Heidrich,* 916

S.W.2d at 251. As such, pursuant to § 77.010, the enactment of Ordinance 10.29 and its filing with the county clerk, rendered the annexation of the Coplin property complete and final for all purposes, including allowing Bonne Terre to acquire and convey it to the State.

Having determined that Bonne Terre's annexation of the Coplin property was not voided by the pre-annexation agreement of the city with Mr. Coplin, we next address the appellants' claim that Ordinances 10.29 and 10.29A were vague and indefinite such that they were both void, preventing the final and complete annexation of the property by Bonne Terre.

**Were Ordinances 10.29 and 10.29A vague and indefinite?**

Initially we note that we need not address the vagueness of Ordinance 10.29A, in that we found, *supra,* that its alleged invalidity did not affect the validity of Ordinance 10.29 in effectuating the annexation of the Coplin property. Hence, we will only address this argument of the appellants as to Ordinance 10.29.

■■ The appellants are correct in contending that ordinances can be so vague as to render them void. *City of Clarkson Valley v. Jones,* 872 S.W.2d 531, 532 (Mo. App.1994). An ordinance is void for vagueness when it uses terms "so vague that a person of common intelligence must guess at its meaning and would differ as to its application." *Id.* "The vagueness doctrine is based upon principles of due process found in the Fifth and Fourteenth Amendments to the United States Constitution and Article I, § 10 of the Missouri Constitution." *St. Louis County v. Kienzle,* 844 S.W.2d 118, 122 (Mo.App.1992).

■■ With respect to their contention that Ordinance 10.29 was void for vague-

include such territory, specifying with accuracy the new boundary lines to which the city's, town's, or village's limits are extended. Upon duly enacting such annexation ordinance, the city, town, or village shall cause three certified copies of the same to be filed with the

clerk of the county wherein the city, town, or village is located ... whereupon the annexation shall be complete and final and thereafter all courts of this state shall take judicial notice of the limits of that city, town, or village as so extended.

ness, other than concluding that it was "too vague and indefinite to be valid," the appellants present no definitive or relevant argument or authority in their brief to support their contention. When a party on appeal " 'fails to support a contention with relevant authority or argument beyond conclusions, the point is considered abandoned.' " *Estate of Dean v. Morris,* 963 S.W.2d 461, 466 (Mo.App.1998) (*quoting Beatty v. State Tax Comm'n,* 912 S.W.2d 492, 498–99 (Mo. *banc* 1995)). Hence, we will treat this portion of the appellants' claim as abandoned.

Having rejected the appellants' challenges to the validity of Bonne Terre's annexation of the Coplin property, we find that the property was properly annexed by reason of Ordinance 10.29's passage and that the annexation was complete and final when the ordinance was filed with the St. Francois County Recorder of Deeds on December 11, 1996. § 71.012.3. And, because the annexation was complete and final before Bonne Terre, through its agent, the BSC, acquired the Coplin property, the acquisition and subsequent conveyance to the State were not illegal as contended by the appellants.

Point denied.

Given our disposition of the appellants' first three points, we need not address their Points IV and V.

### Conclusion

For the foregoing reasons, the judgment of the circuit court, denying the appellants' petition for declaratory judgment and injunctive relief, is affirmed.

All concur.