Pierre HEIDRICH, and Maria Long, Appellants,

v.

CITY OF LEE'S SUMMIT, and Tarquad Corporation, Respondents.

No. WD 49843.

Missouri Court of Appeals, Western District.

Dec. 5, 1995.

As Modified Jan. 30, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 30, 1996.

Application to Transfer Denied March 26, 1996.

Sherwin L. Epstein, John W. Roe, Mark H. Epstein, Sherwin L. Epstein & Associates, Kansas City, for appellants.

Timothy J. Seal, Mark F. Brady, Polsinelli, White, Vardeman & Shalton, Kansas City, for Respondent Tarquad Corporation.

Stephen P. Chinn, Neil R. Shortlidge, Stinson, Mag & Fizzell, Kansas City, Christine M. Treat, City Attorney, T. Chris Williams, Assistant City Attorney, Lee's Summit, for Respondent City of Lee's Summit.

Before BRECKENRIDGE, P.J., and ULRICH and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

Plaintiffs–Appellants Pierre Heidrich and Maria Long appeal from a judgment of the trial court finding Zoning Ordinance No.

3645 of Respondent the City of Lee's Summit, Missouri to be reasonable and not arbitrary. Plaintiffs raise two points on appeal. Under Point I, Plaintiffs contend that the trial court erred in upholding Zoning Ordinance No. 3645 because the Site Development Plan did not satisfy the requirements of Lee's Summit Ordinance Section 170. Under Point II, Plaintiffs contend that the trial court erred in finding Zoning Ordinance No. 3645 reasonable and not arbitrary.

The judgment of the trial court upholding Zoning Ordinance No. 3645 as to Phases II and III is affirmed. We find, however, that the zoning ordinance is arbitrary and unreasonable as to Phases IV and V only and reverse the judgment of the trial court as to these phases.

The judgment of the trial court finding that the Site Development Plan satisfied the requirements of Section 170 is also affirmed.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

This is an appeal from a legislative action of the Board of Aldermen of the City of Lee's Summit, Missouri, rezoning approximately 138 acres of undeveloped property to District C–P, a planned business district.

### A. *A Description of the Property.*

The property which is the subject of this case ("Subject Property") lies at the northeast corner of U.S. Highway 50 and Todd George Road, a major thoroughfare in Lee's Summit, Missouri (the "City").[1] The Subject Property includes approximately 138 acres of land which extends east of Todd George Road for one and one-quarter mile to the Lee's Summit city limits. The Subject Property is divided roughly down the middle by property owned by the Methodist Board of Missions and Church Extension Society of Greater Kansas City. The latter property is the location of a new church. Other than the church, the Subject Property is undeveloped.

The Subject Property was formerly part of unincorporated Jackson County. It was annexed by the City in April, 1987. Various portions of the property remained zoned as County Zoning A (first dwelling house), B (second dwelling house), F (general business), D (agricultural) and City Zoning R–3P (multi-family planned). That portion of the Subject Property which is adjacent to Todd George Road was zoned as County Zoning F. Under this zoning classification, it could have been developed as residential or as commercial.[2]

The area north of the Subject Property is residential (the Charleston Park residential subdivision). The area east of the Subject Property is in the unincorporated portion of Jackson County and is zoned agricultural.

The area immediately west of the Subject Property and Todd George Road, and fronting on the north side of U.S. Highway 50, is zoned for unplanned commercial uses and is undeveloped.

Plaintiff–Appellants Pierre Heidrich and Maria Long own houses and lots in a subdivision known as Silkwood Estates. Ms. Long is also the developer of Silkwood Estates. Silkwood Estates is to the west of the Subject Property, across Todd George Road, and north of the area immediately adjacent to U.S. Highway 50 which is zoned for unplanned commercial use.

### B. *The Application to Rezone the Subject Property.*

Defendant Tarquad, Inc. filed an application to rezone the Subject Property in February, 1992. The application requested that the Subject Property be rezoned from its current zoning to District C–P, a planned business district.

As required by Lee's Summit Ordinance Section 170 District C–P, Planned Business District ("Section 170"), Tarquad submitted a Site Development Plan with the application.[3] The Site Development Plan shows five phases of development resulting in approximately 900,000 square feet of construction with 5,400 parking spaces. Phase I is the church property described above which is roughly in the

---

1. Todd George Road runs north-south and U.S. Highway 50 runs east-west.

2. The County Zoning is a "pyramid zoning," meaning that under a commercial classification

such as this the owner can build single family, duplexes, multifamily, or commercial.

3. The relevant portions of Lee's Summit Ord.Section 170 are set forth in Appendix B.

middle of the Subject Property.[4] Phases II and III are to the west of Phase I, and Phases IV and V are to the east of Phase I. A simple diagram of the basic structure of the proposed rezoning is attached as Appendix A.

A proposed outer road is shown to the south of the Subject Property and running parallel to U.S. Highway 50. A proposed inner road ("Shenandoah Drive") is shown to the north of the Subject Property. Both the outer and inner roads intersect Todd George Road. Running between Phases IV and V is a proposed Blackwell Road which runs north and south. The Site Development Plan does not show it to intersect with U.S. Highway 50.

Section 170(B)(1) states that a Site Development Plan must show contour levels at intervals "not greater that two (2) feet, unless waived by the Planning Commission or Board of Aldermen." Contour levels show the level of the ground at the time of the zoning application. Section 170(B)(1) also states that the plan "shall show sufficient proposed control grades to interpret the intent of the developer." Control grades show the topography of the ground after the proposed construction is completed. By letter dated January, 1992, Tarquad requested that the requirements of contour levels at two-foot intervals and of control grades be waived. The Site Development Plan it submitted showed contour levels at ten foot intervals and did not show control grades.

### C. *The Planning Commission Hearing.*

The Lee's Summit Planning Commission held a public hearing on the zoning application in February, 1992. Susan Van Petten, Director of City Development, presented the Planning Commission with the Staff Report of the Development Review Committee of Lee's Summit. She also testified at the hearing.

Ms. Van Petten testified that the requested District C–P, a planned business district, and not the current zoning, was appropriate for the Subject Property. The Committee

recommended, however, that the property closest to Todd George Road be restricted to an Office District, rather than a general commercial area, to minimize the impact of the rezoning on Silkwood Estates, which is located across Todd George Road from the planned rezoning. The Committee also recommended that an eighty-foot wide landscaped buffer be provided along Todd George Road for the same reason. Lastly, the Committee recommended that Phases IV and V *not* be approved for rezoning unless and until access to Blackwell Road were to be provided at U.S. Highway 50.

Richard Link is the developer of this area and a partner with Mark Twain Bank in the development of the Subject Property. Mr. Link testified that he was opposed to an Office District along Todd George Road and requested that the entire Subject Property be rezoned to planned commercial as stated in the application. He also agreed that Phases IV and V should not be rezoned until Blackwell Road is provided access to U.S. Highway 50.

A traffic study by Johnson, Brickell and Mulcahy Consulting Engineers ("JBM Traffic Study") was submitted to the Planning Commission, along with a traffic analysis prepared by the Lee's Summit Engineering Department. Both studies only included Phases II and III, and did not include Phases IV and V, impliedly because any traffic from Phases IV and V was to be directed out the proposed Blackwell Road. No allowance was made for traffic which might travel from Phases IV and V out of Shenandoah Drive and onto Todd George Road.

Both studies concluded that Todd George Road will require four lanes of traffic and additional turn lanes in order to accommodate the increase in traffic due to the commercial development. They also concluded that the traffic in the area would remain at an acceptable level following the development of the commercial property.

Ms. Long and Mr. Heidrich testified against the rezoning, contending that the commercial development would have a nega-

---

**4.** Although this property is described as Phase I on the Site Development Plan, this property is not owned by Tarquad. It was also excluded from the legal description of the Subject Property.

tive impact on property values in Silkwood Estates. Ms. Long was concerned with the fact that Shenandoah Drive intersects Todd George Road directly across from the "show house" for Silkwood Estates. Not only did she expect to take a loss on the show house due to the increased traffic, but she also was concerned about how the increased traffic would affect other residences in Silkwood Estates. Ms. Long and Mr. Heidrich were also concerned about the increase in traffic on Todd George Road and that this traffic would endanger children attending an elementary school located north of the Subject Property.

The Planning Commission approved the rezoning application but did not require as a condition thereof that the portion of the Subject Property along the east side of Todd George Road be restricted to an Office District. The Planning Commission also waived the requirement of Section 170(B)(1) that the Site Development Plan contain contour levels at two-foot intervals and control grades.

The Planning Commission's approval was, however, made subject to fulfillment of certain conditions set out in a letter dated March 17, 1992, from Ms. Van Petten to Kenneth R. Murray, City Administrator (the "Staff Letter"). Most of the conditions were matters within the control of the developer, such as the construction of inner and outer roads, right-of-ways, additional road signalization, additional traffic lanes, and an eighty-foot landscaped buffer along the east side of Todd George Road. The key condition now at issue, however, stated that:

1. Based on the traffic study presented by JBM, the first three phases are recommended for approval unconditionally; while phases IV and V are not recommended for approval until access to U.S. 50 Highway is provided at Blackwell Road.

It is conceded that whether access will be provided to U.S. Highway 50 at Blackwell Road is a matter to be determined by the Missouri Highway and Transportation Department, and not the developer, owner or City.

### D. The Board of Aldermen Hearing.

The Lee's Summit Board of Aldermen held a public hearing on the application to rezone the Subject Property in March, 1992. Mr. Link again testified in support of the rezoning. The JBM Traffic Study and the Lee's Summit Engineering Department's traffic analysis were submitted to the Board.

Ms. Van Petten testified again at this hearing. She testified that the current agricultural and general business zoning was not appropriate and recommended approval of the District C–P zoning as to Phases II and III. She again recommended, however, that an Office District be adjacent to Todd George Road and that Phases IV and V not be rezoned unless and until access to U.S. Highway 50 via Blackwell Road is provided.

Mr. Heidrich testified in opposition to the zoning. In addition to the concerns raised before the Planning Commission, Mr. Heidrich testified that he was informed by the Missouri Highway and Transportation Department that it would not provide access for Blackwell Road to U.S. Highway 50 as long as there was an outer access road, as provided in the Site Development Plan. Mr. Heidrich also submitted a letter from the Missouri Highway and Transportation Department. The letter, in reference to the access to U.S. Highway 50 via Blackwell Road, stated "[i]f Route 50 is chosen for freeway design as a result in the Mid–America Regional Council planning process, access to Route 50 will be only at interchanges. There will be no direct access to Route 50."

The opposition to the rezoning also presented the testimony of Don Meyer, a Lee's Summit real estate appraiser, that the surrounding residences would be depreciated by as much as five percent due to increased traffic.

In April, 1992, the Board of Aldermen of the City of Lee's Summit adopted Ordinance No. 3645 (the "zoning ordinance") rezoning the entire Subject Property, including Phases II–V, to City District C–P, a planned business district. Simultaneous with and as part of the rezoning, the City approved the Site Development Plan restricting the use and

development of the Subject Property to the general intent of the plan.

The zoning ordinance did not require that the area adjacent to Todd George Road be limited to an Office District in order to minimize the effect on surrounding property. Approval of rezoning was, however, made "[s]ubject to and in compliance with Staff's letter of March 17, 1992, including Items 1–7 therein, attached hereto and made a part of this ordinance." As noted above, this letter included various conditions about construction of access roads and buffers. The letter also included the condition that "phases IV and V are not recommended for approval until access to U.S. 50 Highway is provided at Blackwell Road." The zoning ordinance also conditioned rezoning of Phases IV and V on "[p]ermanent access to Blackwell Road to 50 Highway. . . ."

### E. The Current Lawsuit Challenging the Rezoning.

Plaintiffs filed suit for declaratory judgment against the City of Lee's Summit and Tarquad, Inc. in May, 1992. Plaintiffs alleged under Count I that the rezoning application did not satisfy certain requirements of Section 170, and under Count II that the approval of the new zoning was arbitrary and capricious and against the weight of the evidence presented to the Board of Aldermen. The trial of this matter was held in December, 1993.

Both parties presented the evidence that was before the Planning Commission and the Board of Aldermen. In addition to this evidence, Ms. Van Petten testified regarding the technical requirements of Section 170 for the Site Development Plan. It was her opinion that the Site Development Plan conformed with the requirements of Section 170.

Ms. Van Petten also testified that it was her opinion that neither the Planning Commission nor the Board of Aldermen in fact approved the rezoning for Phases IV and V because of the lack of access to U.S. Highway 50 from Blackwell Road. Rather, she believed that a new application for the rezoning of Phases IV and V would have to be filed when and if Blackwell Road were built and intersected U.S. Highway 50.

Defendants presented additional evidence regarding the effect of the rezoning on the surrounding area. This evidence included the testimony of expert land use planners that commercial zoning was a reasonable use for the Subject Property. There was also testimony by a real estate appraiser that any additional negative influence on property values in Silkwood Estates caused by the commercial development of the Subject Property would be negligible considering the existing negative influences already in place, including the proximity to the Todd George Road intersection and the fact that the portion of the rezoned land immediately adjacent to the subdivision already had been zoned for general commercial use.

In May, 1994, the trial court entered judgment in favor of Defendants, finding that the zoning ordinance complied with the requirements of Section 170 and that the rezoning was not arbitrary and unreasonable. Plaintiffs filed a Motion for a New Trial which was overruled by the trial court. This timely appeal followed.

## II. STANDARD OF REVIEW

### A. The Standard for Appellate Review of Legislative Rezoning.

The power of municipalities to regulate land use is derived from the state police power as that power is delegated through the enactment of statutes. As such, Missouri counts itself among the large group of jurisdictions which hold that the exercise of zoning power is a legislative rather than a quasi-judicial function. See, e.g., Desloge v. County of St. Louis, 431 S.W.2d 126, 131–32 (Mo. 1968); McCarty v. Kansas City, 671 S.W.2d 790, 793 (Mo.App.1984).

Upon review, this Court may reverse a legislative action "only if arbitrary and unreasonable, meaning that the decision is not 'fairly debatable.'" Summit Ridge Dev. Co. v. Independence, 821 S.W.2d 516, 519 (Mo. App.1991) (citations omitted). A decision is considered arbitrary and unreasonable if it bears no substantial relationship to the public health, safety, morals, or general welfare. State ex rel. Barber & Sons Tobacco Co. v. Jackson County, 869 S.W.2d 113, 117 (Mo. App.1993). If "the public welfare is not served by the zoning or if the public interest

served by the zoning is greatly outweighed by the detriment to private interests, the zoning is arbitrary and unreasonable ..." *Despotis v. Sunset Hills,* 619 S.W.2d 814, 820 (Mo.App.1981). In making this determination, this Court considers:

> the adaptability of the subject property to its zoned use and the effect of zoning on property value in assessing private detriment. The character of the neighborhood, the zoning and uses of nearby property, and the detrimental effect that a change in zoning would have on other property in the area are relevant to the determination of public benefit.

*State ex rel. Barber & Sons Tobacco Co.,* 869 S.W.2d at 117. Zoning ordinances are presumed valid and "any uncertainty about the reasonableness of a zoning regulation must be resolved in the government's favor." *Id.*

### B. *Record to be Reviewed on Appeal.*

Plaintiffs–Appellants contend that this Court's scope of review is limited to the record presented to the legislative body and that any new evidence presented at the trial level cannot be considered by the appellate court.[5] Plaintiffs are confusing the standard applied to the review of an administrative decision with that applicable to review of legislative actions such as that at issue in this case. *See* C. Rathkopf, *The Law of Zoning and Planning* ch. 27A (1978) (discussing the differences between legislative and administrative actions and the review of these decisions).

In the case of the review of administrative decisions, new evidence can be considered by the trial court only in very limited circumstances. *See, e.g., Greene County Concerned Citizens v. Board of Zoning Adjustment,* 873 S.W.2d 246, 255 (Mo.App.

1994). As explained in *Hoffman v. Town and Country,* 831 S.W.2d 223, 225 (Mo.App. 1992), however, the trial court "reviews a presumptively valid decision of the local legislative body to determine whether the decision was fairly debatable, on a record, which may, and probably quite often does, differ from the record before the legislative body." *Id.* at 225. Or, as stated by our Supreme Court:

> The pertinent inquiry is thus not what matters may have been literally or physically before the Council or present in the lawmakers' minds, but rather whether the Council's action *when viewed in the light of the facts existent at the time of enactment of the Ordinance was reasonably doubtful or fairly debatable.*

*Desloge,* 431 S.W.2d at 132 (emphasis added). In any event, we find the result of our review would be the same regardless whether we consider the additional evidence adduced in the circuit court.

## III. THE ZONING ORDINANCE IS VALID AS TO PHASES II AND III, BUT INVALID AS TO PHASES IV AND V

We first address Plaintiffs' contention that the trial court erred in finding the zoning ordinance reasonable. Plaintiffs contend that the rezoning was unreasonable and arbitrary because increased traffic would cause congestion on Todd George Road, and because the new zoning would adversely affect the use and value of adjacent residential properties. Plaintiffs also contend that, as to Phases IV and V only, there was no evidence on which to assess the adverse effects of the rezoning on the adjacent residential properties. Plaintiffs also contend that Phases IV and V do not have access to public thoroughfares and that approval of zoning of an area which is without such access is arbitrary.[6]

---

5. In support of their argument, Plaintiffs cite to *Sears v. Columbia,* 660 S.W.2d 238 (Mo.App. 1983), which stated that "[t]rial and appellate review [of a legislative action] is *on the record* to determine if there was substantial evidence to support the Council's decision...." *Id.* at 246 (emphasis added). This statement must be read in light of the fact that the appellate court's decision referred to the *trial court* record in determining whether the court properly found the tax bills invalid, not the legislative record. Moreover, the trial court developed an extensive record in reaching its decision; it did not limit itself to a paper record of what was before the legislative body.

6. As noted above, while Phase I was depicted on the Site Development Plan, the developer does not own and did not request that the land which belongs to the church be rezoned, nor was it rezoned as part of Zoning Ordinance No. 3645. For these reasons, we limit our discussion to Phase II, III, IV and V, only.

### A. *The Zoning Ordinance was not Unreasonable and Arbitrary as to Phases II and III.*

■ Sufficient evidence existed for the trial court to find that the zoning ordinance was reasonable and not arbitrary as to Phases II and III. Rezoning the Subject Property to a planned business district is compatible with the surrounding area. The Subject Property is at the intersection of a major thoroughfare and a U.S. Highway. The property immediately west of Todd George Road along U.S. Highway 50 and south of Silkwood Estates is already zoned commercial. The property immediately east of the Subject Property along U.S. Highway 50 is in the unincorporated portion of Jackson County and is zoned agricultural. Moreover, that portion of the Subject Property closest to Todd George Road, and Silkwood Estates, was previously zoned as County Zoning F, which allowed even more minimally regulated commercial and other uses than did the approved C–P rezoning.

■ Plaintiffs contend, however, that the rezoning is unreasonable because it will result in additional traffic at the intersection of Todd George Road and U.S. Highway 50. Plaintiffs testified that the proposed "inner road" running along the north of the development, Shenandoah Drive, would intersect Todd George Road directly across from the entrance to Silkwood Estates. This will result in traffic congestion in that area. Beyond this testimony, Plaintiffs did not present any expert evidence that the level of traffic on Todd George Road would be increased to unacceptable levels.

On the other hand, the JBM Traffic Study and the study performed by the City's traffic engineer indicated that, with the improvements recommended by the studies and which were required by the zoning ordinance as a precondition to building, the level of service on Todd George Road would remain acceptable. In light of this evidence, the decision that the increase in traffic could be accommodated and should not preclude rezoning was at least fairly debatable. *See Treme v. St. Louis County,* 609 S.W.2d 706, 714 (Mo.App.1980) (holding rezoning is at least fairly debatable where the evidence on traffic was conflicting).

■ Plaintiffs also contend that the rezoning would adversely affect the use and value of their property by decreasing their property values and making it harder for them to sell their property should they choose to do so. While some loss may be sustained to the residences closest to Todd George Road, the "fact that some loss will be sustained to adjoining landowners as a result of the rezoning is not controlling in determining whether the rezoning is so arbitrary and unreasonable as to be invalid." *Treme,* 609 S.W.2d at 714.

Moreover, Silkwood Estates is already located only 500 feet from the intersection of a major thoroughfare, Todd George Road, and a U.S. Highway. The property directly south of Silkwood Estates has been zoned for commercial use since 1986. The Silkwood Estates subdivision is nevertheless still being developed and new homes are still being constructed and sold. The zoning ordinance also provides some protection for these residences in the form of an eighty-foot landscaped buffer zone along Todd George Road. *See Treme,* 609 S.W.2d at 714 (upholding commercial zoning which provided for a 55 foot set back and buffer zone of berms, trees and landscaping). Based on this evidence, the trial court could have found that the decision to rezone Phases II and III of the Subject Property was not arbitrary and unreasonable and that it was at least fairly debatable that the rezoning is compatible with the surrounding area.

### B. *The Zoning Ordinance is Arbitrary and Unreasonable as to Phases IV and V.*

■ While there was adequate evidence for the trial court to conclude that the rezoning as to Phases II and III was at least fairly debatable, no such evidence existed as to Phases IV and V. As noted above, Plaintiffs were very concerned about the increased traffic and congestion that would be caused by the proposed commercial development. However, no evidence was presented to the Planning Commission or the Board of Aldermen regarding how the development of Phas-

es IV and V would affect traffic on Todd George Road or in surrounding residential areas. The JBM Traffic Report did not include any findings about trip generations for Phases IV and V, projected peak hour traffic volumes, lane configurations or intersection control. Phases IV and V simply were not addressed in the study. The City's Traffic Report also did not address Phases IV and V. It is likely this traffic impact was not studied because Phases IV and V were not to be developed until access was provided at Blackwell Road to them and to U.S. Highway 50, and so any effect on Todd George Road would be speculative until it was determined what access would be provided at Blackwell Road. However, as all Phases are part of a single development, and all were ostensibly approved now, it was incumbent on the parties to present some evidence to support the rezoning of Phases IV and V and to provide a basis for the Board to determine the effect of approval of those Phases on Plaintiffs' property and the surrounding area.

Defendants contend that additional evidence regarding the impact of Phases IV and V was presented to the trial court. This evidence included the testimony of expert land use planners that commercial zoning was a reasonable use for the Subject Property. There was also testimony by a real estate appraiser that any additional negative influence on property values of Silkwood Estates caused by the commercial development of the Subject Property would be negligible considering the existing negative influences already in place, including the proximity to the Todd George Road intersection and the fact that other nearby land is already zoned for general commercial use.

Assuming that this evidence could be considered upon review of the Board's decision to rezone Phases IV and V of the Subject Property, this evidence only generally addresses the issue whether commercial zoning is the best use of the Subject Property. It does not specifically address the effect of Phases IV and V of this particular planned development on the surrounding residential area. In particular, it does not address the effect of additional traffic and congestion caused by Phases IV and V upon the sur- rounding residential neighborhood, a major concern of Plaintiffs. Moreover, no other evidence was presented on which the Board of Aldermen could base its determination to rezone Phases IV and V. No basis was presented on which it could have decided whether the negative impact of the rezoning as to Phases IV and V was outweighed by the benefit to the public of the proposed rezoning. *See Despotis,* 619 S.W.2d at 821. The zoning ordinance as to Phases IV and V was thus arbitrary and unreasonable.

**C.  *Ordinances Can be Partially Invalidated.***

■ We must now determine whether the invalidity of the rezoning of Phase IV and V invalidates the entire ordinance. The established rule is that if an ordinance is partially invalid, "the remainder of the ordinance should not be stricken down as void unless it may be found judicially that the city council would not have passed the entire enactment if it had known of such invalidity." *Wilson v. Waynesville,* 615 S.W.2d 640, 642 (Mo.App. 1981). *See also Boonville v. Rowles,* 869 S.W.2d 889, 892 (Mo.App.1994).

■ This general rule has "frequently been applied with respect to zoning ordinances. Generally, under such rule, a zoning ordinance in part invalid will not be declared void in toto where it is designed to promote the public health, safety and general welfare...." **McQuillin, *Municipal Corporations* § 25.63 (3d ed. 1991).** *See, e.g., Cities Serv. Oil Co. v. Oak Brook,* 15 Ill.App.3d 424, 304 N.E.2d 460 (1973) (holding ordinance which established set back requirements invalid as to particular strips of land).

Plaintiffs nevertheless contend that a zoning ordinance such as this one which incorporates a Site Development Plan into it cannot be held partially invalid because the underlying plan must be approved in total. In support, Plaintiffs cite *McCarty v. Kansas City,* 671 S.W.2d 790 (Mo.App.1984). In *McCarty,* the city adopted a zoning ordinance and plan for the development of a business district. The plan provided for one structure in the eastern portion with the remaining land devoted to parking or open space. After approval, the developer submitted a revised

plan which indicated that this property would instead be used for automobile sales and repair. The city approved the revised plan without taking the procedural steps necessary for the approval of a rezoning. *Id.* at 792–93.

*McCarty* held that in order to change the plan the city was required to follow the procedures for the adoption of a new ordinance. In so holding, *McCarty* explained that the plan was an integral part of the zoning ordinance and any changes adding to the plan were in effect a change in the zoning ordinance. *Id.* at 795–96.

■■■ We agree that if the developer's final plan made any significant change in the Site Development Plan, such as deletion of the buffer area, the developer would be required to seek approval of any such change by the Board of Aldermen through passage of a new ordinance. Here, however, the issue is not whether and how the developer can amend the Site Development Plan. The issue is the validity of the initial ordinance approving the Plan. It is clear from the record that the Board of Aldermen had the option of approving some or all of the development's Phases. It was not restricted to approval of all Phases of the Site Development Plan or none. Indeed, the Planning Commission only recommended approval of Phases II and III, and Ms. Van Petten still interprets the ordinance to require future Board approval of Phases IV and V. In other words, the parties and the Board treated the Phases as severable.

In fact, the conditions attendant to the zoning ordinance which were contained in the Staff Letter treat Phases II and III separately and distinctly from Phases IV and V. While Phases II and III were to be rezoned upon the satisfaction of the conditions stated in paragraphs 2–6 of the Staff Letter, Phases IV and V were not to be rezoned unless and until the happening of an entirely separate event—Blackwell Road being built and given access to U.S. Highway 50. Ms. Van Petten even testified that she believed that due to this separate treatment the developer would have to apply for future approval to build Phases IV and V when, if ever, access of Blackwell Road to Highway 50 was obtained.

While we do not so read the ordinance, such a belief simply reconfirms our conclusion that the City would have approved Phases II and III without regard to approval of Phases IV and V.

For these reasons, we hold that the provisions of the zoning ordinance concerning Phases II and III are severable from the provisions relating to Phases IV and V. Moreover, the zoning ordinance as to Phases II and III is designed to promote the public health, safety and general welfare. *See* Section III A, *supra.* As such, we hold that the zoning ordinance is invalid only as to Phases IV and V, and is valid as to Phases II and III.

## IV. THE TRIAL COURT DID NOT ERR IN FINDING THE SITE DEVELOPMENT PLAN COMPLIED WITH REQUIREMENTS OF SECTION 170

Plaintiffs also contend that the Site Development Plan did not comply with the requirements of Section 170 of the City of Lee's Summit Ordinances in that: (1) the rezoned district is to be established on only one tract of land under single ownership or unified control, whereas here the Subject Property is divided by property owned by a church and denominated as Phase I; (2) Phases IV and V do not have access to a major thoroughfare; (3) the Site Development Plan adversely affects the value and use of properties immediately adjacent to the proposed development; and (4) the Site Development Plan does not have control grades. Because this Court finds that the zoning ordinance is valid only as to Phases II and III and not as Phases IV and V, it need not address Plaintiffs' points one and two.

### A. Substantial Evidence Existed for the Board to Conclude that the Site Development Plan did not Adversely Affect the Uses of Properties Immediately Adjacent to the Proposed Development.

Section 170(A)(4) of the City of Lee's Summit Ordinances provides that the Site Development Plan:

must present a unified and organized arrangement of buildings and service facilities which shall have a fundamental relationship to the properties comprising the

planned development, and *shall not adversely affect the uses of properties immediately adjacent to the proposed development.*

(emphasis added).

■ Plaintiffs contend that this provision requires the applicant to offer specific evidence before the Planning Commission and the Board of Aldermen which proves that the development will have no adverse effect on the properties immediately adjacent to the proposed development. Plaintiffs further contend that Tarquad did not satisfy this requirement because it did not offer any evidence that Silkwood Estates would not be adversely affected by the development.[7]

The language of Section 170 cannot be read as imposing such an absolute requirement. As Respondents note, Section 170 requires only that the plan show that the rezoning will not adversely affect *the uses* of properties immediately adjacent to the rezoned land. Here, there was evidence that the use of the subdivision for single family residences would not be adversely affected by the development because of the addition of more lanes of traffic on Todd George Road to handle traffic, as well as because a landscaped buffer zone would be built. This evidence, if accepted, showed that traffic in the area would remain at an acceptable level.

■ While, as Plaintiffs note, they presented evidence that the value of some Silkwood Estates properties may be adversely affected up to 5 percent of its value by the

development, Respondents presented contrary evidence that any such effect would be minimal in light of the fact that the property is already located next to commercially zoned space and at the intersection of a major thoroughfare and U.S. Highway. In any event, proof that the rezoning would affect the *value* of some Silkwood Estates homes does not constitute proof that it would adversely affect *use* of the subdivision for single family residences. Indeed, Missouri has recognized that every rezoning necessarily has *some* impact on the area surrounding it. *Strandberg v. Kansas City*, 415 S.W.2d 737, 743 (Mo. banc. 1967). Missouri has nonetheless held that the fact that *some* loss of value will be sustained by adjoining land owners does not make rezoning arbitrary and unreasonable. *Treme*, 609 S.W.2d at 714; M. White, *Missouri Land Use Law & Practice* § 345, at 3–23, 3–24 (1993). To the contrary, the legislative body normally weighs the positive and negative effects of rezoning on the adjacent land and on the community in making a policy decision whether to rezone. There was evidence from which it could conclude that the rezoning would not adversely affect the use of the immediately adjacent area.[8]

### B. Substantial Evidence Existed for the Board to Conclude that the Site Development Plan Satisfied Section 170.

Plaintiffs also contend that the zoning ordinance is invalid because the Site Develop-

---

7. The developer and the City also argued that Silkwood Estates was not immediately adjacent to the development because it was separated from it by Todd George Road. We note, however, that adjacent is defined as "immediately preceding or following with nothing of the same kind intervening." *St. Ann v. Spanos*, 490 S.W.2d 653, 656 (Mo.App.1973) (citations omitted). Thus, "two buildings may be adjacent though separated by a walkway; two areas of land may be adjacent though separated by a stream or a road." *Id.* This definition is consistent with how the term adjacent is used in zoning cases. *See, e.g., Broadway Apartments, Inc. v. Longwell*, 438 S.W.2d 451, 454 (Mo.App.1968) (including as adjacent property that is located across intersections and roads).

8. As Respondents also note, Section 170's requirement that the development adversely affect *the use of immediately adjacent property* is located in subsection A of Section 170 entitled

"General Conditions." Subsection A lists several factors to be considered by the Planning Commission and Board of Aldermen in determining whether to approve a Site Development Plan along with rezoning. For instance, this subsection also provides that "the Board of Aldermen must satisfy itself as to the adequacy of the thoroughfares to carry the additional traffic projected to be generated by the development." This section does not set out detailed technical submittal requirements for the Site Development Plan. The latter are listed in subsection B, entitled "Preliminary Plan" and include such things as scale, stages of development, etc. In other words, whether the rezoning has an adverse affect on adjacent property is a factor which the Board must consider. But, as held in *Treme*, 609 S.W.2d at 714, the mere fact that some adverse affect will occur does not make rezoning arbitrary.

ment Plan did not contain control grades as required by Section 170 of the Lee's Summit Ordinances. Section 170(B)(1) provides in pertinent part that:

The proponents of the Planned Business District shall submit with the rezoning application a preliminary site plan drawn to a scale of not less than fifty (50) feet to the inch which shall show ... the existing topography *with contour intervals not greater than two (2) feet, unless waived by* the Planning Commission or Board of Aldermen, for good cause shown, .... *The Plan shall show sufficient proposed control grades to interpret the intent of the developer.*

(emphasis added). The Planning Commission waived the requirement that the Plan indicate contour levels at two foot intervals and that it include control grades. Plaintiffs contend that the Planning Commission could only waive the contour intervals requirement and could not waive the requirement that the developer show control grades.[9]

As explained above, "contour levels" as used in Section 170 refers to the level of the ground as it existed as the time of the zoning application. Pursuant to Section 170(B)(1), the Planning Commission could waive the requirement of showing contour levels at two-foot intervals, and it did so in this case. The Site Development Plan nevertheless showed the land's contour levels at every ten feet. These contour levels indicate that the Subject Property was basically level, and did not contain any major hills or valleys.

"Control grades" as used in Section 170 refers to the base elevation of the buildings after construction. Section 170 only requires

a sufficient showing of control grades to allow the Board to "interpret the intent of the developer." Thus, if the Board believed it could determine the intent of the developer from the information which was otherwise provided on the Site Development Plan, then it would be free to waive any requirement that more specific proposed control grades be shown.

■ Here, the Site Development Plan showed basically flat land, showed its contours at ten feet intervals, and showed no plans to make any major landscape changes which would affect the base elevation after construction. It was not arbitrary or unreasonable for the Board to determine on this evidence that sufficient evidence existed for it to "interpret the intent of the developer" as required by Section 170(B)(1). *Cf. Karelitz v. Soraghan,* 851 S.W.2d 85, 88 (Mo.App. 1993) (holding that Board's failure to comply with precise requirement of city ordinance did not render its decision void where transcript of proceedings before Board was sufficient to assure meaningful review of Board's decision).

For these reasons, the judgment of the trial court upholding Zoning Ordinance No. 3645 as to Phases II and III is affirmed. We find, however, that the zoning ordinance as to Phases IV and V is arbitrary and unreasonable and reverse the judgment of the trial court as to these phases only.

The judgment of the trial court finding that the Site Development Plan satisfied the requirements of Section 170 is affirmed.

All concur.

---

**9.** Defendants contend that this issue cannot be raised on appeal because it was not pled in Plaintiffs' Petition and issues cannot be asserted for the first time on appeal. *See Whitaker v. Springfield,* 889 S.W.2d 869, 874 (Mo.App.1994). While Plaintiffs' Petition does not allege this specific point, it does state that "a plan was not submitted with the application describing the stages of the development and *other data as required by ordinance.*" (emphasis added). We find that the "other data" includes control grades. It is thus appropriate for this Court to consider this point on appeal.

# APPENDIX A

---

<div style="display: flex;">

**APPENDIX B**

*Section 170. District C–P (Planned Business District)*

A. General Conditions

1. A District C–P may be established on a tract of land in single ownership or under unified control; however, no zoning request shall be approved until a preliminary site plan for the area has

</div>

been prepared and submitted to the Planning Commission and Board of Aldermen in compliance with the regulations and requirements of this section for approval by the Commission and Board of Aldermen.

2. ...

3. The location of any District C–P shall be on property which has access to major thoroughfares, and the Planning Commission and Board of Aldermen must satisfy itself as to the adequacy of the thoroughfares to carry the additional traffic projected to be generated by the development.

4. The preliminary site plan for the proposed development must present a unified and organized arrangement of buildings and service facilities which shall have a fundamental relationship to the properties comprising the planned development, and shall not adversely affect the uses of properties immediately adjacent to the proposed development.

5. The proponents of a Planned Business District shall submit a sketch plan, drawn to scale, showing the general arrangements of streets within the remainder of this ownership. Such sketch plan need not include more than one thousand (1000) feet from the boundaries of the area zoned as a Planned District. (Ord. 1198, 4–21–70)

6. ....

B. Preliminary Plan:

1. The proponents of the Planned Business District shall submit with the rezoning application a preliminary site plan drawn to a scale of not less than fifty (50) feet to the inch which shall show the boundaries of the property zoned C–P, the existing topography with contour intervals not greater than two (2) feet, unless waived by the Planning Commission or Board of Aldermen, for good cause shown, and the proposed size, location and arrangements of buildings, parking areas, with proposed arrangement of stalls and number of cars, entrance and exit driveways, and their relationship to existing and proposed streets, alleys and other public ways or public property, and any additional information required by the Planning Commission or Board of Aldermen. The Plan shall show sufficient proposed control grades to interpret the intent of the developer. The preliminary plan shall also show the existing development of adjacent properties within two hundred (200) feet, including the location and type of buildings and structures thereon. If the Planned Business District is proposed in an unplatted area, the preliminary plan shall be accompanied by a plat, giving the full legal description of the boundaries of the property and area to be dedicated for a public use. (Ord. # 3264, 3–14–89)

2. The developer shall indicate on the preliminary site plan the stages proposed to be followed in the construction of the Planned Center. (Ord. 1198, 4–21–70)

3. If this preliminary site plan is found to comply with the intent of the requirements and regulations set forth in this section, the Planning Commission or Board of Aldermen shall require the proponents to submit a final development plan to the Planning Commission for its review and recommendation provided the rezoning request is approved. The final development plan may be submitted separately for the first and each successive stage of construction. (Ord. # 3264, 3–14–89)